THE HAKALA LAW GROUP, P.C.
Brad A. Hakala, CA Bar No. 236709
Ryan N. Ostrowski, CA Bar No. 305293
One World Trade Center, Suite 1870
Long Beach, California 90831
Telephone:    562.432.5023
Facsimile:    562.786.8606
Email:    bhakala@hakala-law.com
          rostrowski@hakala-law.com

Attorneys for *Amici Curiae*
A Voice For Choice Advocacy, Inc.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY HOEG, M.D., Ph.D., RAM DURISETI, M.D., Ph.D., AARON KHERIATY, M.D., PETE MAZOLEWSKI, M.D., and AZADEH KHATIBI, M.D., M.S., M.P.H,<br><br>Plaintiffs,<br><br>vs.<br><br>GAVIN NEWSOM, Governor of the State of California, in his official capacity; KRISTINA D. LAWSON, President of the Medical Board of California, in her official capacity; RANDY W. HAWKINS, M.D., Vice President of the Medical Board of California, in his official capacity; LAURIE ROSE LUBIANO, Secretary of the Medical Board of California, in her official capacity; MICHELLE ANNE BHOLAT, M.D., M.P.H., DAVID E. RYU, RYAN BROOKS, JAMES M. HEALZER, M.D., ASIF MAHMOOD, M.D., NICOLE A. JEONG, RICHARD E. THORP, VELING TSAI, M.D., and ESERICK WATKINS, members of | Case No. 2:22-cv-01980-WBS-AC<br><br>**[PROPOSED] BRIEF OF *AMICI CURIAE* A VOICE FOR CHOICE ADVOCACY, INC. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:      Hon. William B. Shubb<br>Date:       January 23, 2023<br>Time:       1:30 PM<br>Location:   Courtroom 5 |

1  the Medical Board of California, in their official capacities; and ROBERT
2  BONTA, Attorney General of California, in his official capacity
3            Defendants.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*[Proposed] Brief of Amici Curiae – A Voice of Choice Advocacy, Inc.*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ……………………………………………….2

**INTRODUCTION**……………………………………………………….......3

**ARGUMENT**…………………………………………………………….. 7

    I.    CAL. BUS. & PROF. CODE § 2270 REGULATES PROTECTED SPEECH, NOT MERE CONDUCT…………………………………………….7

    II.   CAL. BUS. & PROF. CODE § 2270 VAGUENESS AND OVERBREADTH VIOLATES THE FIRST AMENDMENT AND THE FOURTEENTH AMENDMENT ……………………………………………..…… 11

    III.  THE STATE HAS AMPLE TOOLS TO ADDRESS PROFESSIONAL MISCONDUCT……………………………………………………... 12

**CONCLUSION**……………………………………………………………13

*[Proposed] Brief of Amici Curiae – A Voice of Choice, Inc.*

# **TABLE OF AUTHORITIES**

**Cases**

*Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) ........................................... 7, 8, 10

*Frisby v. Schultz*, 487 U.S. 474 (1988) ................................................................. 13

*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010) ......................................... 11

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d
    1043 (9th Cir. 2000). ........................................................................................ 9

*Nat'l Inst. of Family & Life Advocates v. Becerra ("NIFLA")*, 138 S. Ct.
    2361 (2018)……………………………………………………………….. 7

*Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014)……………………………… 10

*Reed v. Town of Gilbert* 576 U.S. 155 (2015) ......................................................... 8

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)……………………………….. 8

*Tingley v. Ferguson* 47 F.4th 1055 (9th Cir. 2022) ........................................ 8, 9, 10

*United States v. L. Cohen Grocery Co.*, 255 U. S. 81 (1921). ............................... 11

*United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 816 (2000) ................... 13

*United States v. Williams*, 553 U.S. 285 (9th Cir. 2008) ....................................... 11

*Wollschleger v. Gov., Fla.*, 848 F.3d 1293 (11th Cir. 2017)…………..…………10

**Statutes**

Cal. Bus. & Prof. Code § 2270 ......................................................................... passim

Cal. Bus. & Prof. Code §§ 2234 ....................................................................... 6, 8, 12, 13

Wash. Rev. Code § 18.130.020 ................................................................................ 9

# INTRODUCTION

So much is still unknown about Covid-19, from its nature to treatment. Researchers, for instance, are still trying to determine the efficacy of Covid-19 boosters and understand "long Covid" (a range of symptoms that can begin weeks or months after a patient is first infected).[1] With such a new, ever-evolving virus, efforts to find a broadly accepted standard of care or come to a medical 'consensus' remain elusive, at best, especially compared to decades-long problems such as the benefits of aspirin (as a blood thinner) for heart disease.[2] In fact, it is well-established within the medical community that it generally takes between 14 to 17 years of research to establish a general and dependable standard of care, and to move that standard of care into actual practice.[3] Thus, when patients direly need all potential credible information to be made available, and thereafter be able to openly discuss the same with their trusted medical professional(s) to make informed decisions for their course of treatments, a significant misstep is to restrict any "conveyance of information" by punishing it under the erroneous guise of "misinformation." Unfortunately, Cal. Bus. & Prof. Code § 2270 ("B&P § 2270"), formally known as Assembly Bill ("AB") 2098 does just that.

With B&P § 2270, California does the inconceivable, regulates speech on an ever and rapidly evolving topic related to public health concerns. When discussing Covid-19 with patients, B&P § 2270 expressly prohibits doctors from discussing "information that is contradicted by contemporary scientific consensus." Yet in the time it takes to put a doctor through California's disciplinary process (typically 2 years, excluding appeals), as has been demonstrated with continuously developing research of Covid-19, the "consensus" will almost certainly continue to change–

---

[1] https://www.cnet.com/health/covid-19-questions-we-cant-answer/
[2] https://www.cnet.com/health/covid-19-questions-we-cant-answer/
[3] https://aacnjournals.org/ajcconline/article/25/3/194/3121/Narrowing-the-17-Year-Research-to-Practice-Gap

begging the question on how a definitive "consensus" is even determined in the first place and how California can punish such constitutionally protected speech.

Over the short duration of the recent pandemic, several examples demonstrate the overbreadth, ambiguity, elusiveness, and inherent flaws of B&P § 2270 and the ill-fated attempt to already claim there is a "medical consensus" on Covid-19 treatments. For example, at the onset of the pandemic, Presidential Chief Medical Advisor, Anthony Fauci, "along with several other US health leaders, initially advised people to *not* wear masks."[4] Within several months of this initial directive, Dr. Fauci reversed course on his prior position, and such changed "consensus" that people must wear masks actually became the impetus of mandates enacted throughout the country. Thus, had B&P § 2270 been the law in March and April of 2020 when Dr. Fauci's initial statements represented the then "consensus," a doctor could face discipline for actually advising patients to wear masks.

To make matters worse, recent Covid-19 treatments such as Paxlovid, which were initially met with praise, have now been shown to be not as black-and-white as initially thought. In fact, research now shows that through the use of Paxlovid, a significant number of users, including President Biden, have suffered from a potentially deadly "Covid rebound," where the body initially clears the virus but then it returns even stronger.[5] Despite the foregoing, under the current B&P § 2270 regime, if a doctor advises a patient to use caution, skip the latest new drug, and instead take vitamins such as Zinc and Vitamin C, such doctor could be subject to severe disciplinary action, including loss of licensure – only to (potentially) be vindicated years later if the evolving "consensus" proves that such initial action by the doctor was actually warranted.

The issue with B&P § 2270's language asserting "scientific consensus" is that not only is there little or none when it comes to Covid-19, but that such "consensus"

---

[4] https://www.cnn.com/factsfirst/politics/factcheck_e58c20c6-8735-4022-a1f5-1580bc732c45
[5] https://www.scientificamerican.com/article/what-is-paxlovid-rebound-and-how-common-is-it/

also is not defined within the law. For instance, is the "scientific consensus" that B&P § 2270 references benchmarked with California? The United States? Western Medicine? Bluntly, no such "consensus" has ever been defined, whether geographically or otherwise.

Currently, Sweden, Denmark, Finland, and Iceland – all Western states with medical science and medical regulations matching or exceeding ours – have explicitly paused vaccine administration to those under the age of 21 due to low fatalities from Covid-19 in that cohort coupled with enhanced myocarditis risk from vaccines.[6] However, if B&P § 2270 applies the present U.S. consensus, a doctor could be disciplined for merely discussing such a risk with a young patient, even though such discussion may actually prove to be warranted and/or life-saving.

Essentially, a law was created around an assertion that there is actually a "consensus" within the medical community as to the definitive manner of treating Covid-19; however, such "consensus" is neither established or definitive, nor is it long-lasting, as significant evolution in the recommended treatment and/or hopeful prevention of Covid-19 continues to occur. Furthermore, the recommended Covid-19 quarantine time has vacillated from an initial two-week requirement now to only several days. And the "standard" quarantine practice varies significantly country-by-country, employer-by-employer, and depending on from where someone has traveled or resides. Again, there is no standard or consensus whatsoever, whether in California or otherwise, and thus, the present law is inherently flawed as it is predicated upon the false premise that there actually is.

The forgoing examples illustrate just how problematic B&P § 2270 is. Subjecting doctors to significant government discipline based on a purported "consensus" when medical and scientific opinions have changed and will continue to change is an inherently flawed manner of drafting a law. Again, the medical

---

[6] https://www.reuters.com/article/factcheck-europe-moderna/fact-check-some-european-countries-halted-moderna-covid-19-vaccines-for-young-people-idUSL1N2RE22K

community's practice to establish a true "standard of care" is typically between 14 to 17 years. To now assert through B&P § 2270 that after only two years of Covid-19 there is a medical "consensus" when none actually exists is improper. It is akin to Legislature asserting there is a consensus on the best wing design that all aircraft *must* adhere to right after the first flight by the Wright Brothers at Kitty Hawk. Such laws would seem farcical if disciplinary action, loss of licensure, and the loss of free-expression were not part of them.

Thus, the overbreadth and vagueness of the term *scientific consensus* inevitably leads to unwarranted and detrimental chilling effects on the communication - speech - between a doctor and a patient. *Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002) ("An integral component of the practice of medicine is the communication between a doctor and a patient. Physicians must be able to speak frankly and openly to patients."). By its very nature and composition, and reliance upon a standard "consensus" that simply does not even exist, B&P § 2270 is unconstitutional. Moreover, by and through Cal. Bus. & Prof. Code § 2234, the State and the medical profession already have sufficient and well-established tools in place to address negligence, fraud, and professional malpractice without trampling on a physicians' basic rights.

The brief proceeds as follows. Part I discusses that B&P § 2270 regulates protected speech, not conduct, and therefore violates the First Amendment. Part II argues that the vagueness and overbreadth of B&P § 2270 violates the First Amendment and the Fourteenth Amendment. Part III argues that the State already has ample tools at its disposal to protect patients from professional misconduct and that B&P § 2270 is not narrowly tailored.

///

///

///

///

# ARGUMENT

## I. B&P § 2270 Regulates Protected Speech, Not Mere Conduct

B&P § 2270 unconstitutionally regulates flow of information from doctors to patients. "An integral component of the practice of medicine is the communication between a doctor and a patient. Physicians must be able to speak frankly and openly to patients." *Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002). Prior to a physician engaging in any medical treatment, undertaking any procedure on a patient, or prescribing a patient any medication, a physician must obtain informed consent from their patient by discussing the prognosis, potential courses of treatment, risk factors, and likely outcomes of each potential course of treatment. Accordingly, candor between doctor and patient is "crucial." *Nat'l Inst. of Family & Life Advocates v. Becerra ("NIFLA")*, 138 S. Ct. 2361, 2374 (2018). In this present regard, the law significantly restricts physicians' advice, which is protected speech, and as such, violates the First Amendment. B&P § 2270 is paradigmatic of a content-based regulation where the *substance* of what could be said is restricted, which is evident from the face of the law.

AB 2098, the precursor to B&P § 2270, declares that "the spread of misinformation and disinformation about Covid-19 vaccines has weakened public confidence and placed lives at risk." AB 2098 § 1(d).

Cal. Bus. & Prof. Code, § 2270(a) states as follows:

> It shall constitute unprofessional conduct for a physician and surgeon to disseminate misinformation or disinformation related to COVID-19, including *false or misleading information* regarding the *nature and risks of the virus, its prevention and treatment; and the development, safety, and effectiveness of COVID-19 vaccines*.

Cal. Bus. & Prof. Code, § 2270(a) (emphasis added).

B&P § 2270(b) then defines two key terms in the law:

(3) "Disseminate" means the conveyance of information from the licensee to a patient under the licensee's care in the form of treatment or advice.

(4) "Misinformation" means false information that is contradicted by contemporary scientific consensus contrary to the standard of care.

B&P § 2270(b)(3)&(4).

As it is facially evident, B&P § 2270 seeks to restricts the "conveyance of information" that is presently contradicted by "contemporary scientific consensus," even when such information is in the form of advice or a recommendation.

The law is therefore unconstitutional on several fronts:

*First*, on its face, B&P § 2270 is a content-based restriction, which discriminates against speech based on the <u>substance</u> of what a licensee communicates. In *Reed v. Town of Gilbert*, the Supreme Court declared "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed v. Town of Gilbert* 576 U.S. 155, 156 (2015). Moreover, the Ninth Circuit uses a "continuum approach" to evaluate whether the government is interfering with the speech of healthcare workers or instead merely regulating the conduct of the profession. *Tingley v. Ferguson*, 47 F.4th 1055, 1072 (9th Cir. 2022). If the former, the First Amendment and strict scrutiny apply. *Id* at 1072-73; *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

*Second*, in obvious contradiction with the Ninth Circuit in *Tingley*, B&P § 2270 does not distinguish treatment and speech. Specifically, the law defines the

1  prohibited dissemination as a licensed professional's "conveyance of information
2  from the licensee to a patient under the licensee's care in the form of treatment *or*
3  *advice*." B&P § 2270(b)(3) (emphasis added). *See Tingley v. Ferguson* 47 F.4th at
4  1072 ("We distinguished [in *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002)]
5  prohibiting doctors from *treating* patients with marijuana—which the government
6  could do—from prohibiting doctors from simply *recommending* marijuana.") *See*
7  *Tingley*, 47 F.4th at 1072.

8        On the contrary, B&P § 2270 *lumps* treatment and advice together while
9  restricting both based on an overbroad and elusive concept of 'contemporary
10 scientific consensus.' B&P § 2270 expressly limits advice and recommendations
11 when it comes to *nature and risks of the virus, its prevention and treatment* among
12 others. This is not regulating professional conduct but rather, is the blatantly
13 unconstitutional regulation of speech.

14       *Third*, *Tingley* involved a law where <u>change</u> is the subject of regulation, not
15 speech. As the State of Washington argued in that matter, the issue was whether
16 therapeutic interventions have a "fixed outcome" or an "a priori goal of an externally-
17 chosen identity." *See* Wash. Rev. Code § 18.130.020(4)(b) (" 'Conversion therapy'
18 does not include counseling or psychotherapies that provide ... identity exploration
19 and development that do not seek to *change sexual orientation or gender identity*.")
20 (emphasis added). As such the Washington law at issue was not restricting flow of
21 information and expression. Unlike the law at issue in *Tingley*, B&P § 2270 *does*
22 limit (and punish) expression of professional opinions in the form of
23 recommendations and advice if they are against that which is allegedly the then
24 current "consensus." As stated in *Tingley,* states' power to regulate stops at "the
25 <u>safety</u> of medical treatment" *Tingley*, 47 F.4th at 1064, and thus does not extend to
26 policing what ought to be communicated in a doctor's office.

27       *Fourth*, even if physicians' 'speech' vis-à-vis patients could be the subject of
28 regulation, these cases often involve psychotherapy and psychoanalysis where

treatment is in the form of speech. *See e.g.*, *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1054 (9th Cir. 2000) (rejecting the argument that psychoanalysis, as a "talking cure," was pure speech because a "key component of psychoanalysis" is the "treatment of emotional suffering and depression") (internal citation, quotation marks omitted). *Tingley* involved a similar situation where the constitutionality of goal-oriented conversion psychotherapies was at issue. It was against this backdrop that the court in *Tingley* stated that "those treatments are implemented through speech rather than through scalpel."

*Lastly*, various courts, including the Ninth Circuit, have previously recognized a distinct category of "professional speech" – that is, speech "within the confines of a professional relationship" – that received "diminished" constitutional protection. *Pickup v. Brown*, 740 F.3d 1208, 1228 (9th Cir. 2014). The Supreme Court, however, expressly rejected such a rule in *NIFLA*. *See* 138 S. Ct. at 2371-72, 2374-75.

Thus, consistent with *NIFLA*, the First Amendment protects physicians' medical advice and recommendations, including about treatments the government is otherwise permitted to regulate, because physicians and patients "must be able to speak frankly and openly." *See Conant*, 309 F.3d at 636-37 (federal regulation allowing government to revoke DEA prescription authority based solely on physician's recommendation that medical marijuana could help patient violated the First Amendment). Likewise, the Eleventh Circuit expressly recognized that "doctor-patient communications *about* medical treatment" are distinct from the treatment itself, and thus "receive substantial First Amendment protection[.]" *Wollschleger v. Gov., Fla.*, 848 F.3d 1293, 1309 (11th Cir. 2017) (*en banc*) (quoting *Pickup*, 740 F.3d at 1227).

Treating Covid-19 is vastly different from conversion therapy or psychotherapy. Treating Covid-19 is not through speech, but based on a host of ever-evolving medications, therapeutics, and shots. The decision in *Tingley* does not support the constitutionality of B&P § 2270 as explained above. And even assuming

-10-

*arguendo* that it does, applying rationale from cases predicated upon psychotherapy or other similar practices to Covid-19 treatments is misplaced and would lead to significantly harming the patients by restricting necessary information required by them to make informed decisions regarding their own health.

As drafted, B&P § 2270 undoubtedly crosses the threshold and reaches speech protected by the First Amendment. It expressly limits the ability of physicians to speak about certain topics with their patients and thereby restricts their ability to communicate, all in abeyance of Constitutional constraints.

## II. B&P § 2270's Vagueness and Overbreadth Violates the First Amendment and the Fourteenth Amendment.

B&P § 2270 restricts information that is presently contradicted by "contemporary scientific consensus." This term is evasive, overbroad, and vague. The law uses the term "contemporary scientific consensus" (not even medical consensus) without any guidance as to how this "consensus" could be ascertained.

Such vagueness in the law – a speech-based restriction -- will inevitably lead to highly subjective discretion in disciplining physicians. A physician could be punished by merely advising their own patient about the 'nature' of Covid-19 – with no connection to any treatment – that is against some then current and prevailing understanding of the 'nature' of this disease, which may be subject to change.

A law is unconstitutionally vague if it does not give "a person of ordinary intelligence fair notice of what is prohibited" or if it is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (9th Cir. 2008). The terms of a law cannot require "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). Stated differently, the law should furnish an "ascertainable standard" for the conduct it condemns. *United States v. L. Cohen Grocery Co.*, 255 U. S. 81, 89 (1921).

Society is still greatly at odds as to what scientific consensus is for a novel respiratory disease that sparked several major contradictory health measures across the globe.  The law does not allow this term to be defined through the whims of the enforcer without any criteria used to assess scientific consensus so as to be able to appropriately enforce the terms of B&P § 2270.  From where is this consensus derived? As a matter of just a few weeks ago, China still believed in the efficacy of lockdowns with its zero-tolerance Covid policy, while most others cast doubt on the efficacy of lockdowns.[7] Moreover, as delineated in California Business and Professions Code, Section 2234.1(c), "since the National Institute of Medicine has reported that it can take up to 17 years for a new best practice to reach the average physician and surgeon, it is prudent to give attention to new developments not only in general medical care but in the treatment of actual diseases, particularly those that are not yet broadly recognized in California." The guidance codified within this code reveal that B&P § 2270 is unconstitutionally vague since it does not give an ascertainable standard. B&P § 2270 is against the standards established within both the Fourteenth Amendment's Due Process Clause and the First Amendment.

### III. The State Has Ample Tools to Address Professional Misconduct

The State of California already has ample tools at its disposal to govern professional misconduct without violating a physician's First Amendment Right. Specifically, there exists a less restrictive alternative to tackle the problem California legislature attempts to identify in B&P § 2270. Under California Business and Professions Code,  Section 2234, the Medical Board of California can already take action against any licensee for unprofessional conduct arising from "gross negligence," "repeated negligent acts," "incompetence," and acts involving "dishonesty." Cal. Bus. & Prof. Code §§ 2234, (b)–(e).

---

[7] Vincenzo Alfano & Salvatore Ercolano, The Efficacy of Lockdown Against COVID-19: A Cross-Country Panel Analysis, Appl Health Econ Health Policy, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7268966/

Moreover, Section 1 of AB 2098 suggests that the *underlying purpose or legislative intent* for this law was to combat **vaccine** misinformation. Yet, since now enacted B&P § 2270 goes well beyond information about vaccines and regulates *all* conveyance of information about *all* aspects of Covid-19 (*e.g.*, nature, risks, treatment, etc.) which runs afoul the amorphous 'contemporary scientific consensus' standard.  To avoid overbreadth, governments are required to tailor laws narrowly, so they are using the *least restrictive means* to achieve their purpose. *See Frisby v. Schultz*, 487 U.S. 474 (1988). Undoubtedly, B&P § 2270 cannot be construed, in any manner, to be the least restrictive mean available by the State to combat vaccine misinformation (or other Covid-19 related misinformation for that matter).

Moreover, the State has also failed to provide any showing that despite the already-robust professional misconduct disciplinary process previously established through the existence of Bus. & Prof. Code § 2234, that B&P § 2270 is actually needed to restrict content-based speech in such a vague and over-expansive manner. *See United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").  As nary a showing was ever made by the State, B&P § 2270 should also fail due to the fact that not only is it *not* narrowly tailored to achieve its goals through the least restrictive means available, but that there are already other well-established laws in place which already allow the Medical Board of California to take action against any licensee for unprofessional conduct.

## **CONCLUSION**

For the foregoing reasons, Amici respectfully urge the Court to grant Plaintiffs' motion and preliminary enjoin the State from enforcing B&P § 2270.

///

///

January 3, 2023

**THE HAKALA LAW GROUP, PC**
BRAD A. HAKALA

_____
Brad A. Hakala
Ryan N. Ostrowski
Attorneys for Proposed Amici Curiae
A VOICE FOR CHOICE
ADVOCACY, INC.

# CERTIFICATE OF SERVICE

**Tracy Hoeg, M.D., Ph.D. et al. v. Gavin Newsom,** *et al.*

*U.S.D.C., Eastern District of California; Case No. 2:22-cv-01980-WBS-AC*

At the time of service, I was over 18 years of age and not a party to this action. I am employed in Los Angeles County, State of California. My business address is One World Trade Center, Suite 1870, Long Beach, CA 90831.

On the date below, I served true copies of the following document(s):

**[PROPOSED] BRIEF OF *AMICI CURIAE* A VOICE FOR CHOICE ADVOCACY, INC. IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action as follows:

| | |
|---|---|
| Gregory Dolin , PHV<br>New Civil Liberties Alliance<br>1225 19th Street NW, Suite 450<br>Washington, DC 20036<br>Email: gdolin@ubalt.edu | *Counsel for Plaintiffs,*<br>*Tracy Hoeg, Ram Duriseti, Aaron Kheriaty, Pete Mazolewski, and Azadeh Khatibi* |
| Jenin Younes , PHV<br>New Civil Liberties Alliance<br>1225 19th Street, Northwest Suite 450<br>District of Columbia, DC 20036<br>Email: jenin.younes@ncla.legal | |
| Laura B. Powell<br>2120 Contra Costa Blvd #1046<br>Pleasant Hill, CA 94523<br>Email: laura@laurabpowell.com | |
| Aaron Lent<br>1300 I Street, Suite 1260<br>Sacramento, CA 95814<br>Email: aaron.lent@doj.ca.gov | *Counsel for Defendants,*<br>*Gavin Newsom, Kristina Lawson, Randy Hawkins, Laurie Rose Lubiano, Michelle Anne Bholat, David E. Ryu, Ryan Brooks, James M. Healzer, Asif Mahmood, Nicole A.* |
| Kristin A. Liska<br>Office of the Attorney General | |

1

---

| | |
|---|---|
| 455 Golden Gate Ave., Suite 11000 | *Jeong, Richard E. Thorp, Veling Tsai,* |
| San Francisco, CA 94102 | *Eserick Watkins, and Rob Bonta* |
| Email: kristin.liska@doj.ca.gov | *Attorney General of California* |

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Attached Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with The Hakala Law Group, P.C.'s practice for collecting and processing documents for mailing. On the same day that the documents are placed for collection and mailing, the documents are deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY PERSONAL SERVICE:** I personally delivered said document(s) to the persons at the addresses listed in the Attached Service List.

✓ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by court rules.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 3, 2023, at Long Beach, California

                                                        */s/ Lindsey Holland*
                                                          Lindsey Holland