1    LAURA B. POWELL (CA Bar No. 240853)
     2120 Contra Costa Blvd. #1046
2    Pleasant Hill, CA 94523
     Telephone: (510) 457-1042
3    laura@laurabpowell.com

4    CASEY NORMAN (*Pro Hac Vice*)
     casey.norman@ncla.legal
5    NEW CIVIL LIBERTIES ALLIANCE
     1225 19th Street NW, Suite 450
6    Washington, DC 20036
     Telephone: (202) 869-5210
7    Facsimile: (202) 869-5238

8    GREGORY DOLIN (*Pro Hac Vice*)
     greg.dolin@ncla.legal
9    NEW CIVIL LIBERTIES ALLIANCE
     1225 19th Street NW, Suite 450
10   Washington, DC 20036
     Telephone: (202) 869-5210
11   Facsimile: (202) 869-5238

12   JOHN VECCHIONE (*Pro Hac Vice*)
     john.vecchione@ncla.legal
13   NEW CIVIL LIBERTIES ALLIANCE
     1225 19th Street NW, Suite 450
14   Washington, DC 20036
     Telephone: (202) 869-5210
15   Facsimile: (202) 869-5238

16   *Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY HØEG, M.D., Ph.D., <br> RAM DURISETI, M.D., Ph.D., <br> AARON KHERIATY, M.D., <br> PETE MAZOLEWSKI, M.D., <br> and <br> AZADEH KHATIBI, M.D., M.S., M.P.H., <br><br> *Plaintiffs*, <br><br> v. <br><br> GAVIN NEWSOM, Governor of the State of California, in his official capacity; <br> KRISTINA LAWSON, President of the Medical Board of California, in her official capacity; | Case No. 2:22-cv-1980 <br><br> **Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss** |

| | |
|---|---|
| **RANDY HAWKINS, M.D.**, Vice President of the Medical Board of California, in his official capacity; **LAURIE ROSE LUBIANO**, Secretary of the Medical Board of California, in her official capacity; **MICHELLE ANNE BHOLAT, M.D., M.P.H., DAVID E. RYU, RYAN BROOKS, JAMES M. HEALZER, M.D., ASIF MAHMOOD, M.D., NICOLE A. JEONG, RICHARD E. THORP, M.D., VELING TSAI, M.D.**, and **ESERICK WATKINS**, members of the Medical Board of California, in their official capacities; and **ROB BONTA**, Attorney General of California, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| *Defendants*. | ) |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

ARGUMENT .................................................................................................................................... 1

    I.    INTRODUCTION.................................................................................................................. 1

    II.    DEFENDANTS' REPEAL OF THE STATUTE DOES NOT PERMIT A FINDING OF MOOTNESS UNDER THE VOLUNTARY CESSATION DOCTRINE ................................. 3

    III.    PLAINTIFFS' PURSUIT OF NOMINAL DAMAGES PRESENTS A LIVE CASE AND CONTROVERSY .................................................................................................................. 8

        A.    Because Nominal Damages Seek Redress for a Completed Injury, the Repeal of an Offending Statute Does Not Moot the Claim ............................. 8

        B.    Defendants Failed to Timely Raise a Sovereign Immunity Defense and Have Thus Waived It .................................................................................. 12

        C.    In the Alternative, the Court Should Permit Plaintiffs to Amend the Complaint . 13

CONCLUSION ............................................................................................................................... 15

**ARGUMENT**

**I.  INTRODUCTION**

Plaintiffs submit this Memorandum of Law in response to Defendants' Motion to Dismiss. ECF 63.  *See also* ECF 61 (Jan. 3, 2024) (ordering briefing on motion to dismiss and setting deadlines).  Defendants contend that California's repeal of Section 2270[1] through passage of SB 815, which took effect on January 1, 2024, renders Plaintiffs' claims for injunctive and declaratory relief moot, *see* ECF 61 at 3-4, while the claims for nominal damages are barred by the doctrine of sovereign immunity, *id.* at 5-6, thus necessitating the dismissal of the entire action.  As both contentions are without merit, the Court should deny the motion to dismiss, or, in the alternative, allow Plaintiffs to amend their complaint.

***

All parties agree that Article III of the United States Constitution limits the jurisdiction of federal courts to live cases and controversies.  *See* U.S. Const. art. III, § 2, cl. 1.  The doctrine of mootness, embedded in Article III's case or controversy requirement, necessitates the existence of an actual, ongoing controversy at all stages of federal court proceedings.  *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 868-69 (9th Cir. 2017).  However, an action "becomes moot *only* when it is *impossible* for a court to grant any effectual relief whatever to the prevailing party."  *Chafin v. Chafin*, 568 U.S. 165, 165 (2013) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)) (emphasis added).  *See also Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) ("A case is not moot if *any* effective relief may be granted") (emphasis in original); *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998) (explaining that key consideration of mootness is whether court can fashion any effective relief for plaintiff).

---

[1] Section 2270 of the Business and Professions Code was enacted by Assembly Bill 2098 ("AB 2098"), signed into law on September 30, 2022, and took effect January 1, 2023.

Memorandum in Opposition to Defendants' Motion to Dismiss       1

The party asserting mootness bears the burden of establishing that there remains no effective relief that the court can provide. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). "That burden is always 'heavy.'" *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017) (quoting *Forest Guardians*, 450 F.3d at 461); *see also Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (to establish mootness, a "demanding standard" must be met). Moreover, there are "long-recognized exceptions" to the mootness doctrine that allow claims to remain live even when events occur after litigation commences that would deprive a plaintiff of standing to bring those claims at the outset of a lawsuit. *See Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000) (mootness is not simply "standing set in a time frame").

The California Legislature's repeal of Section 2270 does not moot this case for two reasons. First, Plaintiffs seek nominal damages for violations of their constitutional rights—some of which have already been completed—thus preserving a live controversy for which effective relief may be granted, thereby precluding mootness. *See* Complaint, ECF 1, PageID # 25; *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021) ("[N]ominal damages provide the necessary redress for a completed violation of a legal right."); *Bayer*, 861 F.3d at 868-69 ("A live claim for nominal damages will prevent dismissal for mootness.")(quoting *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002)). For the reasons detailed below, Defendants may not at this juncture of the litigation shield themselves from adverse judicial review by mooting the case on sovereign immunity grounds. Second, under the voluntary cessation doctrine, mootness does not apply where, as here, the Government has repealed a statute in bad faith, in order to deprive Plaintiffs of a favorable adjudication. *See Knox*, 567 U.S. at 307 ("[M]aneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye."); *see also Northeastern Fla. Chapter, Assoc'd Gen'l Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) (defendant may not manufacture mootness by repealing challenged statute and replacing with a similar one).

### II. DEFENDANTS' REPEAL OF THE STATUTE DOES NOT PERMIT A FINDING OF MOOTNESS UNDER THE VOLUNTARY CESSATION DOCTRINE

Defendants' entire mootness argument hinges on the fact that California's legislature formally repealed Section 2270. *See* ECF 63 at 4 (arguing that "when a statute is repealed 'mootness is the default.'" (quoting *Freedom from Religion Found., Inc. v. Abbott*, 58 F.3d 824, 832 (5th Cir. 2023)). However, not all repeals are created equal, and not all give rise to mootness. To the contrary, where the action to repeal a statute is taken in bad faith and/or where it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," the controversy is not mooted and remains live. *West Virginia v. EPA*, 597 U.S. 697 (2022). Here, both mootness exceptions apply.

It is well settled that the voluntary cessation of challenged conduct does not render a case moot because to dismiss under such circumstances would allow—and even encourage—defendants to manufacture mootness to evade an adverse ruling and to subsequently "return to [their] old ways." *Friends of Earth, Inc.*, 528 U.S. at 189; *see also City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001) (the general rule is that voluntary cessation of a challenged practice rarely moots a federal case). At the same time, repeal, amendment, or expiration of challenged legislation is often sufficient to render a case moot and appropriate for dismissal. *See Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019). In *Chambers*, the Ninth Circuit "joined the majority of [other] circuits in concluding that legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party, and that we should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision[.]" 941 F.3d at 1199.

Nevertheless, the *Chambers* rule is not absolute, and the present case does not fit within its framework. Indeed, the voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable

Memorandum in Opposition to Defendants'
Motion to Dismiss                           3

behavior." *City News & Novelty, Inc.*, 531 U.S. at 284 n. 1. *Chambers itself* recognized this principle and that the presumption of good faith that usually applies to legislative actions has no application where there is a "*reasonable expectation* that the legislative body will reenact the challenged provision or one similar to it." *Id*. (emphasis added). Similarly, in *City of Mesquite v. Aladdin's Castle, Inc.*, the Supreme Court refused to dismiss an appeal as moot after the city had entirely eliminated the challenged statutory language from the ordinance at issue because the defendant's repeal of the objectionable language would not preclude it from reenacting the offending provisions if the case were declared moot. 455 U.S. 283, 289 (1982) (noting the city's indications of intent to reenact the challenged provisions if the district court's judgment were vacated). In *Northeastern Florida Chapter*, the Supreme Court concluded that the grounds not to dismiss an appeal as moot were even stronger where a city had entirely repealed a challenged ordinance and then simply repeated the wrongful conduct through a different ordinance. 508 U.S. at 662-63 ("There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so."). As the Court emphasized, the voluntary cessation doctrine "does not stand for the proposition that it is only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot." *Id*. at 662.

In any event, *Chambers* is no longer viable in light of the Supreme Court's decision in *West Virginia v. EPA*, at least insofar as the specific facts of this case are concerned. In *West Virginia*, the Supreme Court held that the EPA's stated intention not to reinstate or enforce the challenged regulation did not moot the case. The Court explained that "'voluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 720 (quoting *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007)). The Court continued:

> Here the government "nowhere suggests that if this litigation is resolved in its favor it will not" reimpose emissions limits predicated

Memorandum in Opposition to Defendants'
Motion to Dismiss                    4

>   on generation shifting; indeed, it "vigorously defends" the legality of such an approach. [*Parents Involved*, 551 U.S. at 719]. We do not dismiss a case as moot in such circumstances. *See City of Mesquite* [455 U.S. at 288-89]. The case thus remains justiciable, and we may turn to the merits.

*Id.*

The same logic applies here.[2] At no time has California explicitly renounced an intention to discipline doctors for disseminating what it deems to be "misinformation" about Covid-19 to patients. To the contrary, it has "vigorously defend[ed] the legality of such an approach," *West Virginia*, 597 U.S. at 720, and has attempted to achieve the same ends through other means. *Cf. Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (finding voluntary cessation exception to mootness did not apply to action challenging State's restrictions against in-person schooling during Covid-19 pandemic where State reopened schools, "unequivocally renounced the use of future school closures," and maintained "steady and consistent" policy allowing schools to permanently reopen).

Despite being subject to multiple lawsuits challenging Section 2270, California has defended the statute as constitutional on every possible occasion at both the district and circuit court levels. *See* Brief for Appellees, *McDonald v. Lawson*, Dkt. 42 (9th Cir. 2023), (Nos. 22-56220, 23-55069). *See also Olagues v. Russoniello*, 770 F.2d 791, 795 (9th Cir. 1985) (holding that abandonment of a federal investigation into illegal voter registration by non-citizens did not moot the plaintiffs' suit because the United States Attorney "ha[d] at all times continued to argue vigorously that his actions were lawful."). On October 17, 2023, the Ninth Circuit asked the parties in *McDonald* to brief the mootness issue.[3] Yet nowhere in the Government's filing did it

---

[2] While *West Virginia* involved a regulation rather than a statute, that distinction is not relevant to the mootness assessment. The Supreme Court's decision did not hinge on whether the contested government action had been imposed through the legislative process or by executive decree.

[3] On February 29, 2024 (the date of this filing), the Ninth Circuit panel vacated the judgment in *McDonald* and remanded with instructions to dismiss the two consolidated cases as moot. However, that decision is not dispositive of and does not undermine any of the Plaintiffs' arguments because the *McDonald* plaintiffs raised *none* of the arguments that Plaintiffs are raising here. *See* Brief for Appellants, *McDonald v. Lawson*, Dkt. 66 (9th Cir. 2023), (Nos. 22-56220, 23-55069) (arguing case not moot because: (1) the future repeal of AB2098 could not moot appeal prior to Jan. 1, 2024, (2) prior to Jan. 1, 2024 effective date, plaintiffs would continue to suffer constitutional harm;

Memorandum in Opposition to Defendants'
Motion to Dismiss                                    5

acknowledge the unconstitutionality of Section 2270.  *See* Letter Brief for Appellees, *McDonald v. Lawson*, Dkt. 67 (9th Cir. 2023), (No. 22-56220).  *Cf. White v. Lee*, 227 F.3d 1214, 1242-44 & n. 27 (9th Cir. 2000) (finding HUD's new policy was sufficient to moot case where new policy became "entrenched" while case was litigated and was distributed to all HUD employees with "specific guidelines on speech and activities protected by the First Amendment," which addressed "all of the objectionable measures that HUD officials took against the plaintiffs in this case, and even confesse[d] that this case was the catalyst for the agency's adoption of the new policy").  California's silence here speaks volumes, given that it has had every opportunity to bolster its mootness argument by conceding that Section 2270 is unconstitutional, yet it has declined to do so repeatedly.

There are additional indications that the Government intends to continue effectuating its unlawful censorship regime despite Section 2270's repeal.  When asked about the repeal by *MedPage Today*, one of Section 2270's most vocal sponsors, Representative Evan Low, responded "fortunately … the Medical Board of California will continue to maintain the authority to hold medical licensees accountable for … misinforming their patients about Covid-19 treatments."  *See* Cheryl Clark, *California Misinfo Law is Destined for the Dustbin*, MEDPAGE TODAY, Sept. 13, 2023.  Defendants argue that nothing in the *Legislature's* behavior suggests bad faith, and that actions or statements of third parties cannot be attributed to the Legislature.  ECF 63 at 4, n.2.  Leaving aside the fact that arguments made solely in a footnote are considered waived, *see Isabel v. Reagan*, 987 F.3d 1220, 1226 n.7 (9th Cir. 2021), the cases on which Defendants rely for this argument distinguish between two kinds of cases.  On the one hand, there are cases in which a later-repealed statute was defended by California's "executive officials, <u>none of whom</u> is the Governor."

---

(3) after Jan. 1, 2024 effective date, ongoing threat of enforcement for past speech made in 2023 while AB2098 was active, and (4) government efforts to censor "misinformation" abound throughout United States).

*Chem. Producers & Distributors Ass'n v. Helliker*, 463 F.3d 871, 879 (9th Cir. 2006) (emphasis added), *overruled on other grounds* by *Chambers*, 941 F.3d 1195 (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000)).  On the other hand, there are cases (like this one) in which the Governor is a party. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 949 (11th Cir. 2023) (the passage or repeal of state legislation is attributable to "the officials with the constitutional authority to participate in the legislative process in Florida: members of the Legislature and the Governor").  Such a distinction is logical given that, when a governor is not a party, "defendant state executive officials are in a position akin to a party who finds its case mooted by 'happenstance,' rather than events within its control." *Helliker*, 463 F.3d at 879 (quoting *Valero*, 211 F.3d at 121).  However, where, as here, the Governor *is* a party, mootness is entirely within his control because the choice of signing or vetoing legislation is his alone.  Cal. Const. art. IV, § 10.

The medical board has also started the disciplinary process against at least one physician for advising a patient that he and his girlfriend should not get one of the Covid-19 vaccines.  Motion for Leave to File First Amended Complaint at ¶ 30, *Hoang v. Bonta*, (E.D. Cal. Oct. 2, 2023), No. 2:22-cv-02147.  Recognizing the risks of enforcing Section 2270 at this juncture given the skepticism that it has received in court, California is trying to sidestep judicial determinations about Section 2270 while still punishing doctors for departing from state orthodoxy on Covid-19 related matters, in effect, enforcing Section 2270 by other means and under another name.  Such evidence of bad faith precludes a finding of mootness. *See Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1038-39 (9th Cir. 2018) (case moot only when "absolutely clear" to court, upon consideration of government's "avowed rationale" for voluntary cessation of challenged position or conduct, that no risk of reoccurrence) (internal citations and quotation marks omitted); *Porter v. Bowen*, 496 F.3d 1009, 1016-17 (9th Cir. 2007) (holding that lawsuit was not moot because "the

Secretary has maintained throughout the nearly seven years of litigation … that [her predecessor] had the authority under state law to threaten [plaintiffs] with prosecution"); *Olagues*, 770 F.2d at 795 (case not moot where government "did not voluntarily cease the challenged activity" and "at all times continued to argue vigorously that [its] actions were lawful").

The State's primary motivation in repealing Section 2270 appears to have been to avoid setting adverse precedent. Only after this Court granted Plaintiffs' motion for preliminary injunction and the State faced a skeptical panel in the Ninth Circuit did the Legislature repeal the law.[4] Governments should not be granted free rein to pass unconstitutional laws and subsequently dodge liability by repealing them if it appears that courts are poised to rule against them. Such an abuse of the system should not be tolerated. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."); *see also Fikre*, 904 F.3d at 1037, 1040 (government cannot moot a case unless it can show that the change in its behavior is "entrenched" or "permanent" and that it has repudiated the challenged conduct); *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 677-78 (5th Cir. 2023) (Ho, J., dissenting) ("[T]he military's record on these issues does not inspire trust. We should be 'suspicious … of officials who try to avoid judicial review by voluntarily mooting a case'—especially in the absence of an admission of illegality or credible assurance of future compliance.") (quoting *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J., concurring).

### III.  PLAINTIFFS' PURSUIT OF NOMINAL DAMAGES PRESENTS A LIVE CASE AND CONTROVERSY

#### A. Because Nominal Damages Seek Redress for a Completed Injury, the Repeal of an Offending Statute Does Not Moot the Claim

On November 1, 2022, Plaintiffs filed a complaint in this Court alleging that Section 2270 (which took effect on January 1, 2023) is facially unconstitutional on both First Amendment and

---

[4] *See McDonald v. Lawson* Oral Argument (Jul. 17, 2023), https://www.youtube.com/watch?v=lShpRZ2KxbA.

Memorandum in Opposition to Defendants' Motion to Dismiss                                8

Due Process grounds. *See* Complaint, ECF 1. The next day, Plaintiffs sought a preliminary injunction. *See* Motion for Preliminary Injunction, ECF 5. Following a hearing on January 23, 2023, this Court granted Plaintiffs' motion and enjoined Defendants from enforcing the challenged statute against Plaintiffs, finding that they had demonstrated a likelihood of success on the merits of their due process claims and were being irreparably harmed while the statute remained in effect. *See Høeg v. Newsom*, 652 F.Supp.3d 1172 (E.D. Cal. 2023) (granting motion for preliminary injunction). Accordingly, Plaintiffs suffered violations of their constitutional rights from January 1, 2023, when Section 2270 took effect, until January 24, 2023, when this Court granted the preliminary injunction. During that 24-day period, Plaintiffs' speech was chilled, as they were compelled to self-censor for fear of prosecution and the threat of sanctions under Section 2270, including the suspension or revocation of their medical licenses. As a result, Plaintiffs were unable to provide their honest opinions and individualized advice on Covid-related matters to their patients without the looming threat of severe professional consequences. *See* Declaration of Dr. Tracy Høeg, attached to Plaintiffs' Motion for Preliminary Injunction as Exhibit A, ECF 6 at ¶¶ 33-34; Declaration of Dr. Ram Duriseti, attached to Plaintiffs' Motion for Preliminary Injunction as Exhibit B, ECF 6 at ¶¶ 16-18; Declaration of Dr. Pete Mazolewski, attached to Plaintiffs' Motion for Preliminary Injunction as Exhibit D, ECF 26 at ¶¶ 14-16; Supplemental Declaration of Dr. Tracy Høeg, attached to Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction as Exhibit A, ECF 26 at ¶¶ 3-10.

Additionally, Plaintiff Azadeh Khatibi's doctor told her that, due to the specter of punishment under Section 2270, California physicians no longer felt that they could provide patients with their true opinions, proving to Dr. Khatibi that she "no longer ha[d] access to [her] doctors' true medical opinions about Covid-19, which [she had] sought and are important to [her] as [she was] immunocompromised following recovery from a life-threatening disease."

Supplemental Declaration of Azadeh Khatibi, attached to Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction as Exhibit D, ECF 26 at ¶¶ 10-11. That chill deprived Dr. Khatibi of her First Amendment right to receive her doctors' honest advice, unfettered by concerns about discipline under Section 2270. *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (holding that the right to receive information is "an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution" because "the right to receive ideas follows ineluctably from the sender's First Amendment right to send them."); *id.* ("The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers." (quoting *Lamont v. PMG*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring))). Moreover, since Dr. Khatibi's doctors were not granted relief by the preliminary injunction as she was, her constitutional right to receive information from them has been violated for over a year.

Under these circumstances, this action is plainly not moot. In *Uzuegbunam*, the Supreme Court held that the plaintiff's request for nominal damages alone (*i.e.*, absent a request for compensatory damages) for a completed violation of his First Amendment rights meant that the case was not moot—even where university officials had abandoned the challenged policy during the pendency of the district court proceedings. 592 U.S. at 292-93 (nominal damages alone could address the plaintiff's First Amendment injury because "every violation [of a right] imports damage"). Drawing on the common law, the Court explained that, though small, "nominal damages are certainly concrete," as they provide "relief on the merits of [the] claim" and permit a plaintiff to "demand payment … no less than he may demand payment for millions of dollars in compensatory damages." *Id.* at 291 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111, 113 (1992)). Because such damages are paid to the plaintiff, they "'affec[t] the behavior of the defendant towards

the plaintiff' and thus independently provide redress." *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)); *accord Mission Prod. Holdings*, 139 S. Ct. at 1660 ("If there is any chance of money changing hands, [the] suit remains live."). Even though a single dollar often cannot provide full redress, "the ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam*, 592 U.S. at 291 (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)); *see also Carey v. Piphus*, 435 U.S. 247 (1978) (when a plaintiff's constitutional rights have been violated, nominal damages may be awarded without proof of any additional injury).

Indeed, an award of nominal damages constitutes a form of redress and relief on the merits, as opposed to attorney's fees, which are "merely a 'byproduct' of a suit that already succeeded." *Uzuegbunam*, 592 U.S. at 292 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 (1998)). Accordingly, courts routinely award nominal damages to prevailing parties for constitutional violations even when claims for injunctive or declaratory relief are mooted. *See, e.g.*, *Klein v. Laguna Beach*, 810 F.3d 693 (9th Cir. 2016) (plaintiff entitled to nominal damages despite mootness of injunctive relief after city repealed challenged portions of law during litigation).

*Uzuegbunam* cannot be distinguished in any pertinent way from this case. Plaintiffs were subject to Section 2270's unconstitutional mandate for several weeks. During this time, they self-censored during interactions with patients so as not to subject themselves to discipline. Dr. Khatibi was deprived of her right to her doctors' honest opinions on Covid-19 related topics for over a year—a deprivation which, to some extent, continues to this day. Accordingly, Plaintiffs have experienced completed (and ongoing) violations of their constitutional rights, and are thus entitled to nominal damages, which they properly sought in their complaint. For the same reasons that the Supreme Court held that *Uzuegbunam* was not moot, this case is not moot. 592 U.S. at 293 ("Because every violation of a right imports damage, nominal damages can redress [plaintiff's] injury even if he cannot or chooses not to quantify that harm in economic terms.") (internal citation

Memorandum in Opposition to Defendants' Motion to Dismiss           11

and quotation marks omitted).

### B. Defendants Failed to Timely Raise a Sovereign Immunity Defense and Have Thus Waived It

Defendants do not dispute any of the above analysis. Instead, they argue that sovereign immunity shields them from liability for any monetary damages—and, thus, from facing a potentially adverse ruling on the merits from this Court. *See* ECF 63, at 5-6. Plaintiffs do not dispute that, as a general matter, the Eleventh Amendment precludes plaintiffs from bringing a suit for damages against a State or state officials acting in their "official capacities" in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). However, sovereign immunity is a defense, and, like all defenses, it may be waived. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998). Unlike subject matter jurisdiction, which courts can and must raise *sua sponte* even where no party pleads the matter, with respect to sovereign immunity, a court need not "raise the defect on its own. Unless the State raises the matter, a court can ignore it." *Id.*

Under well-settled Ninth Circuit law, a State waives its sovereign immunity defense when it fails to timely raise it. *See, e.g.*, *In re Bliemeister*, 296 F.3d 858, 862 (9th Cir. 2002) (holding that a substantial delay in asserting sovereign immunity is a "tactical decision" to which the state will be held). Such a rule promotes fairness, *see id.* ("To allow a state to assert sovereign immunity after listening to a court's substantive comments on the merits of a case would give the state an unfair advantage when litigating suits"), and guards against "undermin[ing] the integrity of the judicial system …, waste[] [of] judicial resources, burden[ing] jurors and witnesses, and impos[ing] substantial costs upon the litigants," *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 756 (9th Cir.), *amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999). Moreover, this rule remains applicable well before the eve of trial and may apply to substantive pre-trial matters as well. *See Hill*, 179 F.3d at 757 ("A party may gain an improper advantage through this tactic even without waiting until the first day of trial. The ruling on a motion for summary judgment, or on pre-trial

Memorandum in Opposition to Defendants' Motion to Dismiss        12

matters such as motions in limine, can signal the probable outcome of the case. The integrity of the judicial process is undermined if a party, unhappy with the trial court's rulings or anticipating defeat, can unilaterally void the entire proceeding…."). In short, "[i]f a state or state agency elects to defend on the merits in federal court, it should be held to that choice the same as any other litigant." *Id.* at 758. *See also Schacht*, 524 U.S. at 393-96 (Kennedy, J., concurring).

The State of California has chosen to defend the suit on the merits[5] for over one year now.[6] It has received the benefit of the Court's views on the likely outcome of this case. *See Høeg v. Newsom*, 652 F. Supp. 3d 1172, 1191 (E.D. Cal. 2023) (ECF 35 at 29) (concluding "that plaintiffs have demonstrated a likelihood of success on the merits of their vagueness challenges."). And only now that it has seen the writing on the wall has the State strategically elected to raise the defense of sovereign immunity. The State has had ample opportunity to raise sovereign immunity, yet chose not to even hint at it until *the hearing* on mootness. ECF 57. Indeed, only after the Court ordered additional briefing, *see* ECF 61, did the State at last reduce this belated defense to writing. Defendants' assertion of sovereign immunity has arrived too late at this juncture of the litigation. The Court should thus hold that Defendants' undue delay constitutes a waiver of the State's sovereign immunity, which may not serve as a basis to moot this case.

### C. In the Alternative, the Court Should Permit Plaintiffs to Amend the Complaint

Defendants' failure to raise the defense of sovereign immunity until prompted to do so during the oral argument on mootness is plainly prejudicial to Plaintiffs. Had Defendants asserted this defense at an appropriate time during this action, Plaintiffs would have had the opportunity to freely amend the complaint to address Defendants' position. Defendants' delayed contention that

---

[5] A grant of a preliminary injunction is considered "on the merits." *See Adibi v. California State Bd. of Pharmacy*, 461 F. Supp. 2d 1103, 1110 (N.D. Cal. 2006).

[6] The same is true with respect to parallel litigation in *McDonald*.

Memorandum in Opposition to Defendants' Motion to Dismiss    13

sovereign immunity shields them from Plaintiffs' nominal damages claim, however, comes well after the Court's May 12, 2023, Scheduling Order informing the parties that no further "amendments to pleadings will be permitted except with leave of court, good cause having been shown under Federal Rule of Civil Procedure 16(b)." ECF 47 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992).

In any event, Plaintiffs readily meet Rule 16(b)'s "good cause" standard, which "primarily considers the diligence of the party seeking the amendment" and which allows for the modification of a pretrial schedule where a deadline could not "reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609. Plaintiffs had no reason to amend the complaint prior to the issuance of this Court's May 12, 2023 Scheduling Order to address a defense that had not yet been asserted—and would not be until December 18, 2023. As discussed above, it is the burden of the *State* to put forward a sovereign immunity defense, and the State can waive that defense should it fail to timely raise it. *Schacht*, 524 U.S. at 389 (explaining that the Eleventh Amendment only "grants the State a legal power to assert a sovereign immunity defense should it choose to do so."). Good cause thus exists to allow Plaintiffs to amend the complaint to sue Defendants in their individual capacities. And Plaintiffs can readily show that amendment is proper under Federal Rule of Civil Procedure Rule 15(a). *See Johnson*, 975 F.2d at 608 (if "good cause" is shown under Rule 16(b), the party must then show that amendment is proper under Rule 15).

Although the present complaint did not name any of the defendants in their personal capacities, *see* ECF 1, Rule 15(a)(2) provides that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, to the extent that the Court concludes that Defendants have not waived sovereign immunity, justice would require leave to amend to permit Plaintiffs to address Defendants' belatedly asserted sovereign immunity defense. Indeed, sovereign immunity does not protect government officials sued in their individual capacities. *See Alden v. Maine*, 527

Memorandum in Opposition to Defendants' Motion to Dismiss     14

U.S. 706, 757 (1999) ("[A] suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally."). As explained above, Plaintiffs have not unduly delayed in seeking such leave, and the proposed amendment would in no way prejudice Defendants—though it would, of course, prevent them from evading an adverse ruling in this Court by manufacturing mootness.[7]

## CONCLUSION

For the reasons set out above, the Court should hold that this case is not moot, and that the doctrine of sovereign immunity does not bar Plaintiffs' claim for nominal damages. In the alternative, the Court should grant Plaintiffs leave to amend the complaint to bring their claims against Defendants in their individual capacities.

Dated: February 29, 2024

Respectfully submitted,

/s/ *Laura B. Powell*
Laura B. Powell (CA Bar No. 240853)
2120 Contra Costa Blvd. #1046
Pleasant Hill, CA 94523
Telephone: (510) 457-1042
laura@laurabpowell.com
*Local Counsel*

/s/ *Casey Norman*
Casey Norman*
Litigation Counsel

/s/ *Gregory Dolin*
Gregory Dolin, MD*
Senior Litigation Counsel

/s/ *John J. Vecchione*
John J. Vecchione*
Senior Litigation Counsel

NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450

---

[7] Even if the Court were to conclude that this case is moot with respect to the claims against Defendants in their official capacities, an amended complaint seeking nominal damages against defendants in their individual capacities would be neither moot, *see Uzuegbunam*, 592 U.S. at 291, nor barred by the Eleventh Amendment, *see Alden v. Maine*, 527 U.S. at 757.

Memorandum in Opposition to Defendants' Motion to Dismiss   15

Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238
casey.norman@ncla.legal

_____

*Counsel for Plaintiffs*

\*Admitted *pro hac vice*

Memorandum in Opposition to Defendants' Motion to Dismiss            16